STATE OF MICHIGAN

IN THE RECORDER'S COURT FOR THE CITY OF DETROIT

RECEIVED
JAN 1 8 1994
THE RECORDERS COURT
APELLATE DIVISION
ENTERED

THE PEOPLE OF THE STATE OF MICHIGAN

    -vs-

DeJUAN MARNELL EDWARDS,

MYRON VIRGIL ASKEW, and

JAMES HENRY McHENRY,

                  Defendants.

Case No.  93-03113

FILED
DEC 0 7 2004
CLERK'S OFFICE
DETROIT

- - - - - - - - - - - - - - - - - - - -/

MOTION

    Proceedings had and testimony taken before the

Honorable DAPHNE MEANS CURTIS, Judge of the Recorder's Court,

at Room 802, Frank Murphy Hall of Justice, Detroit,

Michigan, on Tuesday, June 8, 1993, commencing at or

about the hour of 10:00 A.M.

    APPEARANCES:

                ROBERT AGACINSKI

                Assistant Prosecuting Attorney

                    Appearing on behalf of the

                    People of the State of Michigan

RECEIVED
MAY 2 6 1994
COURT OF APPEALS
FIRST DISTRICT

                DAVID REDSTONE

                Appearing on behalf of

                Defendant-Edwards

RECEIVED
JAN 1 8 1994
THE RECORDERS COURT
APELLATE DIVISION

(Appearances - continued.)

OTIS CULPEPPER and PAULINE SAROKI

  Appearing on behalf of

  Defendant-Askew

THOMAS QUARTERMAN

  Appearing on behalf of

  Defendant-McHenry




Regenia S. Veasy, C.S.R.  (R-2350)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Detroit, Michigan

Tuesday, June 8, 1993

About 10:00 A.M.

--- --- ---

THE COURT:  People of State of Michigan

versus DeJuan Edwards, File Number 93-03113.  The record

should reflect that DeJuan Edwards is in the Courtroom.

Mr. Redstone, this is your Motion.

MR. REDSTONE:   Yes, Your Honor --

good morning.

It is fairly self-contained.  My client

is charged with Felony Murder.  The underlying offense

alleged is Armed Robbery.  And, as I indicated in my

Motion the only evidence supporting or tending to show

that there was an armed robbery was that one of the

surviving Complainants discovered some property missing

after returning to the home from the hospital.  He

didn't testify that he saw the items in the possession

of my client or any of the Defendants.  He didn't

testify that he saw my client or any of the

Co-defendants take those items.  And, the elements of

armed robbery include the requirement that the property

be taken from the Complainant or the Complainant's

presence.

And, in support of that being an

3

element, People versus McGuire, at 39 Michigan Appeals,
308, a 1972 case, and People versus Clark, reported at
113, Michigan Appeals, 477, a 1982 case.  In the Clark
case the Court held that armed robbery was not made out
when the property was discovered missing from a truck
after the Defendant escaped.

And I would also cite People versus
Beebe, B-e-e-b-e, reported at 70, Michigan Appeals 154,
which is a 1976 case where the Court held that property
is in the presence of complainant if it is within his or
her reach, observation, or control, so that the
complainant could have kept the property but for the
threat of violence from the Defendant.

In this case the Complainant testified
at the Exam that there was a shoebox of money missing
from under his bed.  I specifically asked him whether he
saw my client in his bedroom, which he said he didn't.
He didn't know who took the property.  He didn't see
anyone in the bedroom.

Mr. Agacinski is going to say there was
also a gun taken from the scene that was in the area
where the shooting occurred, but there is no testimony
that the gun was taken from him.  He testified that he
put it down on the table and at sometime later the
shooting started, and when he came back to the house

4

later after coming back from the hospital the gun is

gone.

So my position is that there is no

evidence to show that any property in this case is --

the shoebox of money or the gun was taken from the

Complainant or taken in the Complainant's presence and,

therefore, the only other felony is Assault with Intent

to Murder.  That is not an enumerated felony in the

felony murder statute, and there is no predicate felony

for felony murder.  And, also armed robbery hasn't been

made out.  So what I am asking for the Court to do is to

reduce the charge from Felony Murder to Second Degree

Murder and to dismiss the Armed Robbery Count.

THE COURT:  Mr. Agacinski?

MR. AGACINSKI:   Well, the or from the

person or in his presence element occurs when force is

necessary to accomplish the taking, the use of force,

which is shooting of the weapons which caused all the

victims to flee.  The gun was right on the table right

in front of him before he was forced to flee.  It is the

fleeing that made the gun available.  The shoebox is in

the very next room which would have been in his dominion

and control as well.  I suggest because that was the use

of force that extracted the property that caused him to

flee the house and the property to be taken, we do have

5

a from his presence or from his person element.   If there is any --   well, we would amend the Information to the lesser offense of larceny.  It doesn't have to be robbery.  Larceny itself is enough of an offense to justify the felony murder.  So if the from his presence element exists for felony murder, it doesn't cost us anything to amend the Information to a somewhat lesser required element of murder, a murder during the taking of a larceny.

I suggest the fact that we did have the scenario I described, we do have the robbery.  We also have had testimony that one of the witnesses said they waited outside until the police arrived and there was no trafficking in or out of the house before the police got there.  So, no people running in and out taking items, simply the victims fleeing, the shooters fleeing, and then the police make their entry into the house.  So, the suggestion that it may have been stolen by someone else I think is negated by that testimony, at least as far as raising it as a question of fact.  I'd ask the Court to allow us to continue as charged.

THE COURT:  Your response?

MR. REDSTONE:  I don't think that larceny has been made out either.  There is simply no evidence that my client or one of the Co-defendants took

the items involved.  I know the Court has read the
transcript.  This is a known dope house.  There are
seven or eight other people in the house at the time
that this occurred.  They were in various parts of the
house.  Any of those people could have taken the
opportunity to take this property.

And, as far as the gun being on the
table, the way Mr. Agacinski stated it, it is as if he
it sitting there with the gun in front of him when the
shooting happens.  That is not what happened.  The
Complainant involved got up, had his back turned to the
room where the gun was taken, and went into kitchen when
the shooting started.  The gun wasn't in his presence at
the time the shooting started.

But, I think with respect to that
larceny, it is very important that this is a location
where it is known that a criminal enterprise is being
engaged in.  There is people just hanging out in this
house.  I think it is a guess for the Magistrate to
say --  with no evidence to show that these Defendants
took the property, it is a guess for that Magistrate to
say  --  it is an inference based on inference to say
that these are the people that took the property.  I
mean these people were busy with guns shooting, and
there is some testimony to indicate that the shooting

7

occurred and they ran out.  Based on the way the
testimony is in the transcript, it would be hard to see
where my client would have had opportunity to go into
this bedroom and look under the bed and find this item.
The witness testified that he had no reason to believe
that  --  I don't think he said specifically about my
client, but he had no reason to think that the
Co-defendants knew that the shoebox of money was even
there.

Basically the argument that these
Defendants committed larceny is no different than they
committed the armed robbery.  It is not just enough that
the force was used and that in the course of this the
property was taken.  It has to be taken from the
presence of the Complainant by these Defendants, and I
don't think that has been made out.

THE COURT:  One of my concerns from
reading the transcript is that apparently there were
three people killed, a Miss Powers  --  I think Evelina
Powers, someone named Petrous, and Tyrone Davis, I
believe.

MR. AGACINSKI:  Yes.

THE COURT:  According to the
transcript, at the time the Defendant  --  this
Defendant, Mr. Edwards, and another man came in the

house, there were six or seven people there. There was someone named Abraham, there were three Davises, and there was the witness, the first witness who was on the stand, who was --

                    MR. REDSTONE:   (Interposing)   Jimmy Davis.

                    THE COURT: Yes, Jimmy Davis. If my count is incorrect, please let me know.

                    There were six or seven people in the home before the two Defendants entered and before the gunshots were fired, and before these three people were killed.

                    On reading through the transcript, there is no indication as to who took either the gun or the money under the bed. That is the single biggest problem with the Felony Murder Count. I mean one might say it is likely that the persons who came in took the things. But, we don't have anybody who saw either of the Defendants go in the bedroom and take the money from under the bed. Assuming that there was, in fact, a shoebox full of money under the bed, we don't have any testimony regarding that. If so, point me to that portion of the transcript. And, we don't have any indication of what happened to the gun.

                    If you only have three people in the

house and those three people are killed, and the two
people who came into the house have shot and left, the
reasonable inference is  --  assuming you have some
other factors, other elements  --  that the people who
shot those people took the gun and took the money.  You
don't have that in this case.

The money is even a bigger problem
because it wasn't until after one of the witnesses
recovered sufficiently to be released from the hospital
that the money under the bed was discovered missing.  I
don't know and I don't think any of the attorneys can
say what happened to the money between the time of the
shooting and the time that this person came home and
discovered the shoebox missing.

I think not only do you have a problem
with there has to be an assault and the items have to be
taken from  --  there is an assault, of course -- but
the money or other property has to be taken from the
person or in the presence of the person.  You have a
problem with the identity of any person or persons who
took the property in question.   You don't have the
elements of the armed robbery to form the basis of a
felony murder in this case, and the Motion to amend to
conform to the proofs is granted for the reasons just
stated on this record.

10

1                      MR. AGACINSKI:   So we are done as far

2·  as Mr. Edwards is concerned, reduced three Counts of

3   Murder I to Second Degree Murder, and we have quashed

4   the Armed Robbery Count?

5                      THE COURT:   That is correct.

6                      MR. REDSTONE:   Your Honor, I have had

7   some discussion with your Clerk about setting a trial

8   date.   I have to go to 36th District Court.   I am

9   available all through October.   I will check back later

10  in the morning to get the actual date.

11                     THE COURT:   Off the record.

12                         (At about 9:50 A.M. - discussion

13                          held off the record.)

14                     THE COURT:   Back on the record.

15                     People of the State of Michigan versus

16  Myron Askew, A-s-k-e-w, and James McHenry, this is File

17  Number 93-03113.

18                     The Court just heard the Motion with

19  respect to the third Defendant in this case, DeJuan

20  Edwards.

21                     Your appearances, please?

22                     MR. QUARTERMAN:   Thomas Quarterman,

23  appearing on behalf of James McHenry.

24                     MR. AGACINSKI:   Robert Agacinski, for

25  the Prosecution.

                            11

1             MR. CULPEPPER:   W. Otis Culpepper,

2   appearing on behalf of Myron Askew.

3             MS. SAROKI:   Pauline Saroki, also on

4   behalf of Myron Askew.

5             THE COURT:  Mr. Culpepper?

6             MR. CULPEPPER:   Your Honor, we filed a

7   Motion in this matter.  And, I understand from Mr.

8   Agacinski that he would concede that the Motion should

9   be granted.  With that, I have no argument.

10            THE COURT:  I don't think that is quite

11   what he's saying.

12            MR. AGACINSKI:  As I said, the argument

13   for Mr. Culpepper is the same that Mr. Redstone raises.

14   The argument is the same, the evidence is the same, and

15   a consistent ruling should result.  I don't agree, but I

16   think it should be consistent.

17            MR. CULPEPPER:   That is what I thought

18   he said.  We stand on our Motion.

19            THE COURT:  I have had opportunity to

20   read the Motion, and essentially the same argument is

21   raised as was raised by Mr. Redstone in behalf of his

22   client, Mr. Edwards.  And, the Court earlier ruled that

23   there was insufficient evidence establishing the

24   elements of the underlying armed robbery, and therefore,

25   the three Counts of Felony Murder should be quashed.

The charges should be reduced to Murder in the Second

Degree on those three Counts, and the Armed Robbery

dismissed.   That is with respect to Mr. Askew.

Mr. Agacinski is not conceding that the

same argument would be applicable to Mr. Quarterman's

client, Mr. McHenry.

Mr. Quarterman?

MR. QUARTERMAN:   Your Honor, I would

join in Mr. Redstone and Mr. Culpepper's arguments.   It

would seem to me   --   and as I stated in my Brief --

that the evidence in this case against my client comes

from his statement.   If we assume he points up to the

taking of my client's statement, then if the People have

not established a robbery, they have not established the

corpus delicti of a crime.

And, according to the People v Allen

they cannot use my client's statement without

establishing the corpus delicti.   They cannot make out

the elements of the crime or the corpus delicti of the

crime with my client's statement.   It is my position,

with the Court having ruled that there has been no

showing of a robbery of anybody or any taking of

whatever, based on the proofs in the transcript, then

clearly the People have not established the corpus

delicti of robbery, and therefore, my client's statement

1          cannot be introduced.

2                        And, I would rely on the cases cited in

3          my Brief, as well as the People v Allen I believe is

4          still good law in spite of the People v Williams

5          regarding felony murder cases.  And, it would just seem

6          to me it only follows that in the People's proofs at the

7          Preliminary Examination, if they had not established a

8          robbery or a larceny, then they cannot use my client's

9          statement to make that determination.  And, I would

10         think on the basis of that, the Information should be

11         quashed entirely with regard to my client because there

12         is no way that they can properly or should properly be

13         able to introduce his statement.

14                        Furthermore, my client  --  the

15         Information should have been quashed or should be under

16         any circumstances quashed regarding a felony firearm

17         with him because there is no showing at anytime under

18         any circumstances that he had a gun.  And, the People

19         charged in the warrant and the Preliminary Examination,

20         a felony firearm.  There has been no showing that he

21         aided and abetted the procurement or passing of a gun to

22         any individuals, that he was in the vehicle waiting for

23         a robbery to take place.

24                        I would further submit to the Court

25         that under the law of the People v Aaron, as well as the

                                14

1    People versus Kelly, 423, Michigan Reports, 261, that

2    there has been no showing that my client had any intent

3    to commit a crime or commit a murder, and had no

4    knowledge that a murder would be, in fact, committed.

5    And, I think that on that case stands for felony murder

6    cases whereby as an aider and abettor you must show that

7    the aider and abettor had knowledge that a murder would

8    be committed and had the intent based on his actions.

9                 We have nothing in the transcript

10   either by the corporation of my client's statement or

11   whatever that would show any intent on his part.   In

12   fact, he affirmatively states that he had no knowledge

13   that a killing would take place or any intent to kill

14   anybody or whatever.   And, I submit to the Court that on

15   that basis the People have not made out a felony murder

16   against my client.   Aaron states that you must look to

17   the culpability of the Co-defendant.

18                 THE COURT:   Or the principal?

19                 MR. QUARTERMAN:     Yes  --  the

20   Co-defendant, whether or not he had the requisite intent

21   as a principal.   There is no showing of that.   Even if

22   we incorporate in my client's statement  -- incorporate

23   my client's statement, I would submit, at best, the

24   People have made out a case of second degree murder.

25   But, they have not even made out second degree murder

                              15

1   because without showing my client's statement you can't

2·  get to my client sitting in the car.  There is no

3   testimony on the record that places my client doing

4   anything.  Even though a crime has been committed,

5   nothing on the record brings my client into this case

6   without using his statement.  And, I submit to the Court

7   that the corpus delicti of any of the crimes charged

8   does not, in any way, point to my client, and therefore,

9   his testimony couldn't even be used in terms of

10  subjecting him to second degree murder.  And, I would

11  ask the Court to quash the Information regarding all of

12  the Counts.

13          THE COURT:  Mr. Agacinski?

14          MR. AGACINSKI:  Mr. Quarterman raises

15  several issues.  And, the Aaron issue was certainly

16  discussed at the Exam.  I wonder if the Court had a

17  chance to read the argument when I quoted extensively

18  from Aaron?  And the Court in Aaron says particularly a

19  violent crime could provide evidence that one had the

20  state of mind for murder, the gross recklessness and

21  wilful disregard that one's activity could lead to

22  murder.  The violence of one's activity and the crime

23  itself might provide evidence of that.

24          And, I argue participating in,

25  knowingly and by driving armed, going to a dope house,

1    knowing people who are going to be in the dope house who

2    know you and you're going to rob people who can identify

3    you as far as a gunman is inherently dangerous and risky

4    and a life-threatening situation.  Knowingly

5    participating in that kind of robbery is gross and

6    wilful disregard that one's participation may lead to

7    death.   That's the Aaron Court.  And, my argument said

8    as the result, by being a knowing driver of rip-off of a

9    dope pad, armed with armed gunmen and armed participants

10   who know each other, one has to be responsible for the

11   death that follows, the corpus delicti.

12          The Felony Firearm could be made out

13   through the person's confession.  The Court said in

14   People versus Hughey, 186 Michigan Appeals, 585 the

15   Court says the Williams Rule regarding corpus delicti of

16   premeditated murder also applies to felony murder.  We

17   have second degree murder certainly in that we have

18   three dead bodies who were shot, as the result the

19   corpus delicti of murder.  Then we use the Defendant's

20   confession to show it was a felony murder because he

21   went to the location to rob and he said that when the

22   men came out he saw the gun that was taken from the

23   premises.  So, through his confession we certainly have

24   the corpus delicti --  not the corpus delicti, but the

25   evidence of felony murder.

1                 He admits that he was there to rob and

2    that something was taken from the premises.  So, if the

3    Court believes that being the driver in that kind of

4    situation has the mens rea of second degree murder, then

5    he's indeed stuck with a first degree murder charge

6    even when the shooters and takers are going to be tried

7    as second degree murder as an armed robbery.

8                 We did have evidence of the taking.  We

9    have the confession that's taken during the course of

10    the robbery by people who intended to take.  Again,

11    because of that, the situation is different than it was

12    for the other two Defendants.  As the result, he is

13    also, I would argue, stuck with the armed robbery

14    charge.

15                 As far as the Felony Firearm charge is

16    concerned, I'd argue that he is an aider and abettor.

17    He knowingly transports individuals who are armed,

18    knowing they are armed for the purpose of conducting a

19    felony involving those weapons.  As the result, he is an

20    aider and abettor in the procurement and transportation

21    of the weapons that were used to secure the armed

22    robbery.

23                 I would argue that although it was, or

24    the participation may be less than, as the driver,

25    legally he could be charged with first degree murder,

1    armed robbery, and the felony firearm charge.  He is not

2    charged, I believe, with the two Counts of Assault with

3    Intent to Murder.  I would ask the Court to allow us to

4    go to trial on Mr. McHenry because of the combination of

5    his statement as well as the application of all of the

6    other facts we have argued.

7                    MR. QUARTERMAN:    May I just add two

8    things?

9                    THE COURT:  Yes.

10                    MR. QUARTERMAN:    I believe what Mr.

11   Mr. Agacinski  --  I don't agree with his interpretation

12   of Aaron.  I think what he is putting before the Court

13   is a pre-Aaron strict liability argument, that I think

14   the case he cited does not remove the People v Allen.  I

15   think it may support Williams, but I think Allen still

16   is good law with regard to felony murder.  And, I would

17   submit that his arguments do not in any way destroy the

18   intent that is discussed in the People versus Kelly, and

19   in no way is his statement or can his statement or any

20   action on his part be construed or inferred as him

21   having any intent to kill or participate in any type of

22   robbery.  And, I think, Aaron clearly talks about

23   accessory's degree of culpability.

24                    Here we have no showing of any

25   culpability with regard to Mr. McHenry in terms of any

                              19

1   type of murder or intent to murder.  And, I would submit

2   going back to my argument regarding Allen, with the

3   People not having made out any elements of the corpus

4   delicti of any type of robbery  --  even in my client's

5   statement, he doesn't say  --  he said they had a gun,

6   that they brought a gun back  --  it doesn't say where

7   it came from or whatever.  I would submit to the Court

8   that that is no showing  --  as in the proofs in the

9   transcript that were presented by the People do not, in

10  any way, show a robbery or even a taking.

11             THE COURT:  The Felony Firearm Count as

12  far as the Court is concerned is fairly easy.  The

13  Defendant does not have to be  --  this particular

14  Defendant does not have to be in actual possession of

15  the firearm for the Felony Firearm Count to stand

16  against him, for him to be charged properly with that

17  Count.  And, in this case, according to the statement,

18  he drove two other men to this particular location which

19  clearly appears to be a dope house.  Those people were

20  armed at that time.  He aided and abetted the carrying

21  of the firearms, and that Count should stand.

22             As far as the murder Counts are

23  concerned, the Felony Murder, it is still the law that

24  the aider and abettor has to share the knowledge  --

25  well, has to have knowledge of what is going on, what is

1    happening, and has to share the intent of the principal

2    or principals.

3              In this particular case this Defendant

4    was sitting outside, had reason to know that an armed

5    robbery was going to occur or that, at least, it had

6    been planned and discussed.  That is why he was there.

7    He was the driver to the scene and purportedly away from

8    the scene once the offense occurred.

9              The People still had the obligation at

10   the time of the Preliminary Examination to establish the

11   elements of an armed robbery before they could connect,

12   by way of the statement, this Defendant to the armed

13   robbery.  If, in fact, there was a taking in someone's

14   presence, from the person or in the person's presence,

15   and all of the other elements, the Defendant's statement

16   could be used then to connect him as a perpetrator of

17   the robbery.  There was no showing of the elements of

18   robbery absent the Defendant's statement, so you still

19   can't make out a felony murder Count as to this

20   Defendant.

21             The Defendant will be bound over  --  I

22   am sorry, the Felony Murder Count will be amended to

23   Murder in the Second Degree as to this Defendant, and

24   the Felony Firearm Count will stand.

25             MR. AGACINSKI:   What  --  the

1      bind-over  --  the Court rules as far as Mr. McHenry --

2                THE COURT:  (Interposing)   I said

3      bound over, but that was inappropriate language.  That

4      was incorrect.  I am saying I am amending the Count,

5      quashing the original Count of Felony Murder and

6      amending to Second Degree Murder on those three Counts,

7      and the Count of Felony Firearm remains.

8                MR. AGACINSKI:   Thank you.  We need to

9      set a trial date.  I am sure we are going to appeal Mr.

10     McHenry's ruling  --  the other two  --  I am sure Mr.

11     McHenry.  I feel confident of my argument.  If I have

12     enough time or could have a stay as far as there  --

13     well, there should be a severance.  His statement is

14     going to be used, and the other two men --  or have two

15     juries.  I know we are doing to go after Mr. McHenry for

16     Murder I.  I can do Mr. Culpepper and Mr. Redstone and

17     do Mr. McHenry a little later on.

18                THE COURT:  There is one other thing.

19     You filed a Motion, Mr. Quarterman, to suppress the

20     statement.  Are we ready to go on that?

21                MR. AGACINSKI:  That officer has been

22     on furlough.  He is coming back tomorrow and he will be

23     available the rest of June.  I wonder if we could either

24     set a trial date and have that matter heard and

25     reschedule that?  We can set a trial date and have it

heard before trial.

THE COURT:   Are you requesting separate trials?  Or I should look at you, Mr. Quarterman --well, Mr. Culpepper?

MR. QUARTERMAN:   It would be him.

MR. CULPEPPER:   Yes, Your Honor.  We would.

THE COURT:  Mr. Redstone is not here, but, I would expect that he would want a trial separate from Mr. McHenry, but I don't know if he would want a separate trial from Mr. Askew.

MR. AGACINSKI:   I think he also needs one, Your Honor, because Mr. McHenry's statement implicates both individuals in the activity and in the proposed theft.  Mr. Redstone and Mr. Culpepper can go together.

THE COURT:  That is what I am saying. I don't think there is a problem with Askew and Edwards.

MR. CULPEPPER:   From Mr. Redstone's comments as he left the Court, he has his days open.  It appears however you set it he is ready to go.  He was prepared to go with all three together.

THE COURT:   How many witnesses for the People?

MR. AGACINSKI:   Twenty, Your Honor,

23

1    twenty that will be called.

2           THE COURT:  So these are real

3    witnesses?

4           MR. AGACINSKI:  Yes, Your Honor.

5           THE COURT:  And, as far as Mr. Askew?

6           MR. CULPEPPER:  Five, Your Honor.

7           THE COURT:  As far as Mr. McHenry?

8           MR. AGACINSKI:  I bet we are talking

9    about seven or eight trial dates, a lot of civilians, a

10   lot of cross examination.

11          THE COURT:  Seven or eight days?

12          MR. CULPEPPER:  When I hear twenty

13   witnesses, I always believe it is really going to be

14   around what, thirteen real witnesses.  So I mean with

15   twenty witnesses, if you get twenty witnesses and put

16   everybody on, you know you get five and-a-half hours of

17   testimony everyday.

18          MR. AGACINSKI:  Yes, three victims,

19   three autopsies, I think we are talking about seven or

20   eight trial days.

21          THE COURT:  And, these are going to be

22   juries in each case?

23          MR. CULPEPPER:  Right now, yes.

24          THE COURT: You didn't tell me how many

25   witnesses for Mr. McHenry, Mr. Quarterman?

24

1      MR. QUARTERMAN:   I would say two, Your

2  Honor.

3      THE COURT:  Mr. Redstone is not here to

4  tell me how many witnesses for Mr. Edwards, but we will

5  get with him later.

6      THE COURT:  All right.

7      THE CLERK:  October 4th?

8      MR. AGACINSKI:   It is good for me.

9      MR. CULPEPPER:   If discussions

10  develop --  I just found out from Mr. Agacinski that he

11  would not object to a waiver.  If we work out a waiver,

12  can we come in and get an accelerated date?

13      THE COURT:  I don't know if we had

14  earlier dates for waivers.

15      MR. CULPEPPER:   I just mentioned -- I

16  mean the date is good, but I am not convinced that a

17  jury trial necessarily is what we wanted.

18      THE COURT:  Well, you will have

19  opportunity to discuss it with your client and let us

20  know as soon as you are able to give us some indication

21  if it turns into a waiver.

22      MR. CULPEPPER:   Okay.

23      THE COURT:  All right.  I will set

24  October 4th as to all three even if it winds up Mr.

25  McHenry has a separate jury.

MR. CULPEPPER:   May we speak to the

issue of bond?

THE COURT:  Do I have bond reports?

MR. CULPEPPER:   I am not aware.

THE COURT:  What I will do is refer the

Defendants for a screening report so that I will have

information with which to intelligently make a decision.

MR. CULPEPPER:   How long before it

will be ready?

THE COURT:  It takes seven days.  It

takes a week to get a report.

MR. QUARTERMAN:   I would also ask for

a bond report or bond hearing.

MR. AGACINSKI:   If we had a bond

hearing on Mr. Quarterman we can also do the Walker

Hearing.  He is the only one involved with the Walker

Hearing, so we don't have to worry about coordinating.

THE COURT:  How about next Wednesday?

How about Tuesday?

MR. AGACINSKI:   I am in trial, but a

short hearing I am sure I could slip away for whatever

we need.

MR. CULPEPPER:   I am in trial, too.  I

am front of Judge Kerwin.  Just for a bond hearing, Miss

Saroki can do the bond hearing.

MR. AGACINSKI:   Miss Saroki is with

Mr. Culpepper?

THE COURT:   Yes.   We will set it for

next week Tuesday.

MR. QUARTERMAN:   I have a pretrial in

Oakland County Circuit Court at eight-thirty.   It may be

adjourned since my client is in Federal Court in trial.

So, that is a good date.

MR. AGACINSKI:   All right.

THE COURT:   June 15 -- we will need

to sign the Final Conference Form.

Mr. Culpepper still has the other Askew

file.

MR. AGACINSKI:   Oh, that's right.

THE COURT:   So we are still on the

record.   This is File Number 93-02940, People versus

Myron Askew, and the charges are Robbery Armed, Felony

Firearm.

MR. CULPEPPER:   W. Otis Culpepper,

appearing on behalf of the Defendant, Mr. Askew.

THE COURT:   All right.   What is your

pleasure with respect to this case, Mr. Culpepper?

MR. CULPEPPER:   A jury trial, Your

Honor.

THE COURT:   No offer has been made, I

would assume?

2          MR. AGACINSKI:  No, Your Honor.

3          THE COURT:    Waiver or jury?

4          MR. CULPEPPER:    At this point a jury,

5     Your Honor.

6          THE COURT:  How many witnesses for the

7     People, Mr. Agacinski?

8          MR. AGACINSKI:   Six, Your Honor.

9          THE COURT:  Mr. Culpepper?

10          MR. QUARTERMAN:   Three, Your Honor.

11          THE COURT:  Two days to try this case?

12          MR. AGACINSKI:  Yes.

13          THE CLERK:  How is August 4th?

14          MR. AGACINSKI:   I can't do it then.

15          MR. CULPEPPER:  I can't do it either.

16          MR. AGACINSKI:   I am in trial August

17     4th.   The following week I am on vacation.

18          MR. CULPEPPER:   My suggestion would be

19     to follow it.  It may be a mute question.

20          THE COURT:  We may have to do that.

21          THE CLERK:  October 13th?

22          MR. AGACINSKI:   That's good.

23          MR. CULPEPPER:   Good.

24          THE COURT:  October 13, 1993 -- please

25     sign the Final Conference Summary, Mr. Culpepper, and

have Mr. Askew sign it.

That will close the record.

(At about 10:30 A.M. - Motions

concluded.)

- - -

## CERTIFICATION OF COURT REPORTER

STATE OF MICHIGAN        )

                         )        ss.

COUNTY OF WAYNE          )


            I, REGENIA S. VEASY, CSR-2350, an

Official Court Reporter in and for the Recorder's Court

for the City of Detroit, State of Michigan, do hereby

certify that the foregoing pages 1 through 29 inclusive,

in the matter of DeJUAN MARNELL EDWARDS, MYRON VIRGIL ASKEW,

and JAMES HENRY McHENRY, Case Number 93-03113, on Tuesday,

June 8, 1993, and was reduced to typewritten form by means of

Computer-assisted Transcription, and comprise a full, true and

accurate transcript of the proceedings had in the

above-entitled cause.


                         Official Court Reporter


July 12, 1993
    Date

30